IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| ETHICON ENDO-SURGERY, INC. and ETHICON ENDO-SURGERY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>COVIDIEN, INC. and COVIDIEN LP,<br><br>Defendants. | Civil Action No.:  1:11-cv-871<br><br>**Judge Timothy S. Black**<br><br>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,989,275

Defendants, Covidien, Inc. and Covidien LP ("Covidien" or "Defendants"), through their attorneys, respectfully submit this Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,989,275 (the "'275 patent" pursuant to 56 of the Federal Rules of Civil Procedure. In support of its motion, Covidien submits the accompanying memorandum, Statement of Proposed Undisputed Facts ("SPUF"), and Declaration of Matthew Ganas, Esq.

| | |
|---|---|
| OF COUNSEL:<br><br>Drew M. Wintringham III<br>Francis William Ryan, IV<br>Melissa Reinckens<br>Matthew Ganas<br>DLA Piper<br>1251 Avenue of the Americas<br>New York, NY  10020<br><br>Erica J. Pascal<br>DLA Piper<br>401 B Street, Suite 1700<br>San Diego, CA  92101 | s/ Robert A. Pitcairn, Jr._____<br>Robert A. Pitcairn, Jr.  (0010293)<br>Trial Attorney for Defendant,<br>Covidien, Inc.<br>255 East Fifth Street, Suite 2400<br>Cincinnati, OH 45202<br>(513) 977-3477 – Phone<br>(513) 762-0077 – Facsimile<br>rpitcairn@katzteller.com – E-mail |

James F. McCarthy, III
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202

## TABLE OF CONTENTS

Page

MEMORANDUM ............................................................................................................................ 1
I. INTRODUCTION .............................................................................................................. 1
II. STATEMENT OF FACTS ................................................................................................. 4
    A. The Patent ............................................................................................................... 4
    B. Soncision's Non-Infringing Components and Design ............................................ 7
III. LEGAL STANDARD ......................................................................................................... 9
IV. ARGUMENT .................................................................................................................... 10
    A. The Sonicision Sleeve is Not Configured to Loosely Contact the Transmission Rod Other than at Fixed Support Points ......................................... 10
    B. The Sonicision Sleeve Is Not Adapted to Absorb Undesired Vibrations ............. 12
V. CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................9

*Bayer AG v. Elan Pharm. Research Corp.*,
  212 F.3d 1241 (Fed. Cir. 2000) ................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................9

*DeMarini Sports, Inc. v. Worth, Inc.*,
  239 F.3d 1314 (Fed. Cir. 2001) ................................................................................10

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  503 F.3d 1352 (Fed. Cir. 2007) ..................................................................................1

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
  497 F.3d 1262 (Fed. Cir. 2007) ................................................................................10

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(c) ...........................................................................................................9

EAST\59892833.3

## MEMORANDUM

I. **INTRODUCTION**

Based on the undisputed record evidence, Ethicon has failed to raise any genuine issue of material fact with respect to alleged infringement of the '275 patent's only asserted claims: independent claim 1 and dependent claim 3. Independent claim 1, from which claim 3 depends, teaches a "damping member surrounding at least a portion of the transmission rod." The '275 patent also refers to the claimed "damping member" as a "damping sheath." According to the patent, the damping sheath dampens or "absorb[s] unwanted ultrasonic energy from the transmission rod," particularly "unwanted transverse vibrations."

It was already known, prior to the '275 patent, that a sheath could be used to dampen unwanted vibrations in an ultrasonic surgical instrument. The '275 patent purports to provide an advantage over other prior art systems that use a sheath for dampening purposes, by teaching that the claimed damping member be configured in a particular way. Specifically, independent claim 1 requires, *inter alia*, that the claimed damping member be "configured to loosely contact the transmission rod over a portion of the transmission rod" and be "adapted to absorb undesired vibrations along the transmission rod without the use of fluid."

Ethicon asserts that the "sleeve" component in Covidien's accused Sonicision device constitutes the damping member claimed in the '275 patent. However, the record lacks sufficient evidence for the Court to find that the Sonicision sleeve practices the "configured to loosely contact" and "adapted to absorb undesired vibrations" limitations of the '275 patent's independent claim 1. Sonicision thus does not infringe asserted claims 1 or 3 as a matter of law.[1]

---

[1] If Covidien is found not to infringe the '275 patent's asserted independent claim 1, then it cannot be found to infringe dependent claim 3 which incorporates all the of independent claim limitations. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and

1

The record fails to show that the Sonicision sleeve is "configured to loosely contact the transmission rod" of the device, as the Court has construed that claim term.  To satisfy this claim limitation under the Court's construction, the alleged damping member must be "structured to have contact other than at fixed support points, but not tightly fitted."  Ethicon cannot prove from the record evidence, however, that the Sonicision sleeve is structured to contact the transmission rod (*i.e.* waveguide) at locations *other than* fixed support points.

There is no dispute that the Sonicision sleeve may contact the waveguide at raised nodal rib locations on the waveguide.  Ethicon originally argued that these nodal ribs were not "fixed support points" for the sleeve and relied on contact solely at these points for its infringement position.  Ethicon admits that prior to bringing suit, after bringing suit, and throughout fact discovery, it made no effort to determine, and offered no evidence whatsoever to suggest, that the Sonicision sleeve contacts the waveguide anywhere besides the nodal ribs or that the Sonicision waveguide experiences any transverse vibrations at all, let alone significant unwanted transverse vibrations.  Ethicon's expert, Dr. Mark Schafer, admitted at his deposition, however, that contact at the nodal ribs is not what the patent requires in terms of loose contact, because it requires contact other than at these fixed locations.  It was also not until opening expert reports that Ethicon first offered low-resolution CT scan images purporting to show contact between the sleeve and waveguide at locations other than the nodal ribs.  At best, these blurry CT scans confirm that the sleeve makes contact at the raised nodal ribs, but are inconclusive as to contact elsewhere.  Nevertheless, even if these images could prove contact between the sleeve and

---

thus containing all the limitations of) that claim.")  Covidien's motion for summary judgment of noninfringement thus focuses on claim limitations contained in the '275 patent's independent claim 1, incorporated into claim 3.

2

waveguide at locations besides the nodal ribs, Ethicon has still failed to show the existence of any unwanted transverse vibrations where the sleeve allegedly contacts the waveguide.

Thus, even if Ethicon could show contact between the Sonicision sleeve and the waveguide "other than at fixed support points," it is respectfully submitted that there is still no infringement of the '275 patent's claims 1 and 3 as a matter of law, because there is no evidence that the sleeve is "adapted to absorb undesired vibrations along the transmission rod." The record is devoid of any evidence demonstrating that the Sonicision waveguide experiences such "undesired vibrations" in the first place. Ethicon's expert, Dr. Schafer, testified as to the availability of multiple methods for identifying the existence of transverse vibrations. Yet neither Dr. Schafer nor Ethicon ever tested a single Sonicision device for the existence of unwanted transverse vibrations.

By contrast, Covidien performed testing in an effort to reveal whether transverse vibrations in Sonicision exist. Those results do not reveal any transverse vibrations occurring at points along the Sonicision waveguide where Dr. Schafer contends that the blurry CT scans show contact. This outcome confirms the testimony of Covidien engineer, Robert Stoddard, that Sonicision is purposefully designed, both mechanically and electrically, to avoid unwanted transverse vibrations altogether. Ethicon has offered no evidence to show otherwise. Because there is no evidence that Sonicision experiences unwanted transverse vibrations, and no evidence to suggest where any such transverse vibrations might be found on the waveguide if they did exist, Ethicon cannot prove that contact between the sleeve and the waveguide – wherever it might occur – would result in the absorption of undesired vibrations. Thus, no genuine issue exists as to whether the Sonicision sleeve meets the "configured to loosely contact" or "adapted

3

to absorb undesired vibrations" limitation of claims 1 and 3, and summary judgment of no infringement is warranted.

## II.  STATEMENT OF FACTS

### A.  The Patent

Ethicon asserts infringement of independent claim 1 and dependent claim 3 of the '275 patent. (SPUF ¶¶ 6-8.) Entitled "Damping Ultrasonic Transmission Components," the '275 patent was filed on February 28, 1997, issued on November 23, 1999, and is assigned to plaintiff Ethicon Endo-Surgery, Inc. ("Ethicon"). (SPUF ¶ 1.) The ultrasonic surgical instrument described in the '275 patent converts electrical energy into mechanical motion, which results in high frequency longitudinal waves of ultrasonic energy that propagate down the length of the instrument's acoustic assembly to the end effector at the distal end. (SPUF ¶¶ 2-4.) The longitudinal waves of ultrasonic energy result in axial or longitudinal (i.e. forward and backward) vibrational motion of the end effector at the distal end of the acoustic assembly. (SPUF ¶¶ 3, 39.) The end effector is placed in contact with the tissue of the patient to transfer ultrasonic energy to the tissue. (SPUF ¶¶ 3-5.) The transfer of vibrational ultrasonic energy from the end effector to the tissue causes, among other things, mechanical cutting of the tissue. (SPUF ¶ 5.)

The '275 patent's ultrasonic surgical instrument contains a damping member, or damping sheath, that loosely surrounds at least a portion of the transmission rod. (SPUF ¶¶ 10, 11, 20.) The '275 patent's damping sheath is configured to dampen or "absorb unwanted ultrasonic energy from the transmission rod," namely "unwanted transverse vibrations." (SPUF ¶¶ 40, 41, 42, 43.) As the patent recognizes, sheaths were already used to dampen unwanted vibrations in ultrasonic surgical instrument's before the '275 patent. (SPUF ¶ 13.) Rather than inventing the concept of a damping sheath for the purpose of absorbing unwanted vibrations, the '275 patent

4

allegedly teaches a specific configuration of a damping sheath that purports to provide certain advantages over prior art damping systems. (SPUF ¶ 13, 14.)

Independent claim 1, for example, requires that the claimed damping member be "configured to loosely contact the transmission rod over a portion of the transmission rod" and be "adapted to absorb undesired vibrations along the transmission rod without the use of fluid." (SPUF ¶¶ 17, 32.) The Court has construed the "configured to loosely contact" claim term to mean "structured to have contact other than at fixed support points, but not tightly fitted." (SPUF ¶ 18.) In adopting this construction, the Court reasoned that it "is appropriately consistent with the patent specification by distinguishing loose contact from attachment at fixed support members, and tracks the claim language by making clear that the damping member makes actual contact with the transmission rod." (SPUF ¶ 19.)

Figure 5 below shows the damping sheath (160) and transmission rod (86) components of the '275 patent's surgical instrument:



EAST\59892833.3

(SPUF ¶ 66, Ex. A[2] at Fig. 5 (colored labeling added for emphasis).)  The '275 patent's written description explains how the damping sheath interacts with the transmission rod, through loose contact, to supposedly absorb unwanted transverse vibrations:

> …the damping sheath 160 of the surgical instrument 150 loosely surrounds at least a portion of the transmission rod 86.  The damping sheath may be positioned around the transmission rod 86 to dampen or limit transverse side-to-side vibration of the transmission rod 86 during operation.
>
> * * *
>
> The damping sheath 160 is preferably in light contact with the transmission rod 86 to absorb unwanted ultrasonic energy from the transmission rod.  The damping sheath 160 reduces the amplitude of non-axial vibrations of the transmission rod 86, such as, unwanted transverse vibrations….

(SPUF ¶¶ 20, 40-42.)

The '275 patent distinguishes unwanted transverse vibrations – that the damping sheath is designed to absorb – from longitudinal vibrations – that the damping sheath is designed not to interrupt. (SPUF ¶¶ 36-45, 59.)  When an ultrasonic surgical device is in operation, longitudinal ultrasonic vibrations travel down the length of the transmission rod to the end effector (*i.e.* blade), coupled to the distal end of the transmission rod.  (SPUF ¶ 2-4, 12.)  Longitudinal ultrasonic vibration is desired, because it causes high-speed axial (*i.e.* forward and backward) motion of the transmission rod and blade.  (SPUF ¶¶ 35, 38, 39.)  In turn, this rapid longitudinal, or axial, motion permits the blade to cut through tissue as intended.  (SPUF ¶ 4, 5.)

In contrast, transverse vibrations occur perpendicular to the longitudinal axis of desired motion.  (SPUF ¶ 34.)  The '275 patent describes potential unwanted transverse vibrations as "non-axial" and disruptive of the device's operation.  (SPUF ¶¶ 37, 39.)  Thus, the '275 patent damping sheath is designed to minimize or dampen the unwanted transverse vibrations that may

---

[2] "Ex." refers to the exhibits attached to the Declaration of Matthew Ganas, Esq. in Support of Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,989,275, submitted concurrently herewith.

6

occur along the transmission rod and disrupt effective operation of the device. (SPUF ¶¶ 40-45.) By contrast, the '275 patent damping sheath is constructed *not* to interrupt the desired longitudinal vibrations. (SPUF ¶¶ 14, 43, 44, 59.)

The '275 patent also distinguishes the loose contact between the damping sheath and transmission rod – for the purpose of dampening unwanted transverse vibrations – from physical support of the damping sheath on the transmission rod, which preferably occurs at "nodal points" of longitudinal vibration. (SPUF ¶¶ 19, 21, 22.) The '275 patent defines a node as "[a] minimum or zero crossing in the vibratory motion standing wave…where axial motion is usually minimal…". (SPUF ¶ 23, 24.) The '275 patent recognizes that it is preferable to physically support the damping sheath at nodes on the transmission rod to avoid unnecessary interruption with desired longitudinal vibration and axial motion of the transmission rod. (SPUF ¶ 22.)

Thus, the '275 patent identifies nodal points on the transmission rod as fixed support points for the damping sheath, and distinguishes the type of contact between the damping sheath and transmission rod at these fixed support points from the loose contact occurring along other portions of the transmission rod, which the patent requires for dampening purposes. In fact, one purported advantage of the '275 patent over a known prior art system is the ability to dampen undesired transverse vibrations at locations along the transmission rod *other than* nodal points. (SPUF ¶ 14.)

### B. Sonicision's Non-Infringing Components and Design

Covidien's Sonicision does not, and has no reason to, incorporate the damping sheath claimed in the '275 patent. Ethicon contends that Sonicision's sleeve constitutes the damping member claimed in the '275 patent. (SPUF ¶ 15.) The sleeve is placed between the transmission rod (*i.e.* waveguide) and inner tube of the Sonicision device.

7



(SPUF ¶¶ 12, 28.)

The Sonicision sleeve is constructed *not* to loosely contact the portions of the waveguide that independent claim 1 requires. Sonicision is designed to have a clearance between the sleeve and waveguide. (SPUF ¶ 16.) Sonicision is further designed so that the sleeve will contact the waveguide at the waveguide's raised "nodal ribs." (SPUF ¶ 29, 31.) These raised nodal ribs are "fixed support points" for the sleeve. But Ethicon's expert, Dr. Schafer, recognized that contact between the sleeve and a nodal rib "is not what the patent requires in terms of lose [sic] contact," because "[i]t has to have contact other than fixed locations." (SPUF ¶ 30.) Because the waveguide's nodal ribs are raised and placed at nodal points which experience minimal longitudinal vibration (SPUF ¶ 23-27), the nodal ribs represent ideal locations to physically support the sleeve in order to minimize damping of the desired longitudinal vibration along the waveguide. (SPUF ¶ 22.)

By design, the nodal ribs have an increased diameter in comparison to the remainder of the waveguide. (SPUF ¶ 27.) Thus, the clearance between the sleeve and waveguide is greatest at locations on the waveguide other than the nodal ribs. (*See* SPUF ¶¶ 16, 27.) By purposefully avoiding contact between the sleeve and waveguide at locations between the nodal ribs, dampening of desired longitudinal vibrations along the waveguide is also avoided. (*See* SPUF ¶ 54-56.)

8

Sonicision is designed to avoid the undesired transverse vibrations that the '275 patent's damping sheath is intended to absorb. (SPUF ¶ 51, 52.)  Specifically, Sonicision's waveguide is designed to be symmetrical along its length and thereby to avoid transverse vibrations.[3]  (SPUF ¶ 52, 53.)  The Sonicision system is also designed to only resonate at its longitudinal mode (SPUF ¶ 52), once again to avoid transverse vibrations.  Because Sonicision's waveguide does not experience any meaningful unwanted transverse vibrations, the Sonicision sleeve does not serve any dampening purpose – in fact, internal design documents identify dampening the waveguide as a "failure mode" of the sleeve component.  (SPUF ¶ 55.)  Rather than perform any dampening function, Sonicision's sleeve is designed to prevent the waveguide's nodal ribs from contacting the inner tube.  (SPUF ¶¶ 56, 57.)

### III.  LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56(c)).  The mere existence of some evidence in support of the non-movant will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a reasonable jury to find for the non-movant on the issue. *Anderson*, 477 U.S. at 249.  If the non-movant "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on  which [it] will bear the burden of proof at trial," judgment as a matter of law is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[3] Ethicon's Harmonic ACE, which the '275 patent is intended to cover (SPUF ¶ 58), has a curved blade (unlike the straight blade of the Sonicision), which creates asymmetry.  This requires a need to dampen transverse vibrations. (*See* SPUF ¶ 53.)

9

Summary judgment of non-infringement consists of two steps. The Court must (1) first interpret the claim, and (2) then compare the properly construed claims to the alleged infringing device. *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1268 (Fed. Cir. 2007). To establish literal infringement, Ethicon must prove that each and every limitation in a claim is literally met by the accused product. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001). Thus, if the accused product fails to meet even a single claim limitation, then there can be no literal infringement as a matter of law. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

## IV. ARGUMENT

### A. The Sonicision Sleeve is Not Configured to Loosely Contact the Transmission Rod Other than at Fixed Support Points

The Sonicision sleeve is not configured to loosely contact portions of the transmission rod other than at fixed support points, as required by the '275 patent's independent claim 1 and dependent claim 3 under the Court's claim construction. (SPUF ¶¶ 9, 10, 17, 18.) Before bringing suit and throughout fact discovery, Ethicon made no effort to determine whether the Sonicision sleeve contacts the waveguide anywhere besides the nodal ribs and offered no evidence to demonstrate contact elsewhere. (SPUF ¶ 60-65.) But Covidien does not dispute that contact between the sleeve and waveguide occurs at the nodal ribs. (*See* SPUF ¶ 29, 31.) Under the Court's claim construction, contact only at the waveguide's nodal rib locations, and nowhere else, cannot satisfy the limitations of independent claim 1 and dependent claim 3. (SPUF ¶¶ 18, 19, 24, 25, 26, 30.) That is because the nodal ribs constitute fixed support points for the sleeve. Indeed, Ethicon's expert, Dr. Mark Schafer, conceded this point for the first time at his deposition, admitting that contact between the sleeve and a nodal rib "is not what the patent

10

requires in terms of lose [sic] contact," because "[i]t has to have contact other than fixed locations." (SPUF ¶ 30.)

Because the Court has excluded fixed support points from the locations where loose contact must occur, and because Sonicision's nodal ribs are fixed support points for the sleeve, Ethicon must show, among other things, contact between the sleeve and waveguide at other locations to prove infringement. Ethicon cannot make this showing in light of the record evidence. Ethicon does not, because it cannot, dispute that, by design, there is a clearance between the sleeve and waveguide. (SPUF ¶ 16.) Ethicon also cannot dispute that the nodal ribs, where the sleeve makes contact, has an increased diameter in comparison to the rest of the waveguide. (SPUF ¶¶ 16, 27.) As a result of this design, the clearance between the sleeve and waveguide is greatest between the nodal ribs (*see* SPUF ¶ 16), and contact between the sleeve and other portions of the waveguide is thereby avoided.

Internal design documents further show that contact between the sleeve and portions of the waveguide, other than the nodal ribs, is purposefully avoided, because such contact could cause the sleeve to dampen desired, longitudinal vibrations necessary to the optimal operation of the device. (SPUF ¶¶ 54, 55.) Instead, Sonicision is constructed so that the sleeve contacts only the nodal ribs on the waveguide, in order to prevent direct metal-to-metal contact between the waveguide and surrounding inner tube. (SPUF ¶¶ 56, 57.)

Thus, the evidence demonstrates an intentional lack of contact between Sonicision sleeve and waveguide at locations other than the nodal ribs. Ethicon cannot prove otherwise through the record evidence. Low-resolution CT scan images, offered for the first time with Dr. Schafer's opening report, represent the only evidence of alleged contact between the sleeve and waveguide at locations besides the nodal ribs. At best, however, Dr. Schafer's blurry CT scans

11

confirm contact at the waveguide's raised nodal ribs and are inconclusive on contact elsewhere.[4] At worst, these images show an air gap between the sleeve and waveguide at locations other than the nodal ribs. In any event, there is no evidence, and Ethicon provides none, that the sleeve is "structured to have contact," as construed by this Court.

Based on the record evidence, Ethicon has failed to raise any genuine issue as to whether the Sonicision sleeve loosely contacts the waveguide at locations other than fixed support points (*i.e.* nodal ribs) on the waveguide. Rather, the evidence demonstrates that, by design, contact between the sleeve and portions of the waveguide other than the nodal ribs is purposely avoided. Therefore, under the Court's claim construction, and in light of the record evidence, Sonicision does not literally infringe claims 1 and 3 of the '275 patent as a matter of law.

**B.     The Sonicision Sleeve Is Not Adapted to Absorb Undesired Vibrations**

Even if Ethicon could show evidence of contact between the Sonicision sleeve and the transmission rod "other than at fixed support points," Sonicision still does not infringe the '275 patent's claims 1 and 3 as a matter of law, because the sleeve is not "adapted to absorb undesired vibrations along the transmission rod" (*i.e.* waveguide). There is no evidence to show that contact between the sleeve and the waveguide – anywhere along the waveguide's length – would result in the absorption of unwanted transverse vibrations, as described in the patent. Ethicon has failed to measure *any* degree of transverse vibrations in the Sonicision device or identify any point along the waveguide where such vibrations might occur – through testing, experimentation, or otherwise. (SPUF ¶¶ 49, 60-65.) Despite admittedly having experience with

---

[4] Dr. Schafer contends that his low-resolution CT scan images show contact between the sleeve and waveguide at locations other than the nodal ribs. (Ex. C at Ex. A Fig. 9(a), (b), (c) and (e).) Rather than showing any contact between the sleeve and waveguide, these images actually show an *air gap* between the sleeve and waveguide. (Ex. F ¶ 107.) Covidien's expert Dr. Durfee performed similar CT scans of the device, which confirm that the nodal ribs are the only portions of the Sonicision waveguide contacting the sleeve. (Ex. F ¶ 108-109.)

measuring transverse ultrasonic vibrations (SPUF ¶ 46), and testifying as to his familiarity with the multiple methods available for measuring transverse vibrations in ultrasonic surgical instruments (SPUF ¶ 47), Dr. Schafer did not test a Sonicision device for the presence of any transverse vibrations, let alone significant undesired vibrations.[5] (SPUF ¶ 49.) Furthermore, Dr. Schafer admitted that he had access to equipment used to test for transverse vibrations in his laboratory. (SPUF ¶ 48.)

The evidence actually shows that the Sonicision device is designed to avoid generating any transverse vibrations. Because asymmetry results in the occurrence of transverse vibrations (SPUF ¶ 53), the Sonicision waveguide is designed to be symmetrical (SPUF ¶ 51-52). Thus, by mechanical design, Sonicision avoids the transverse vibrations that the patent describes as "unwanted." Electrically, the Sonicision system is designed to only resonate at its longitudinal mode, which also serves to avoid unwanted transverse vibrations. (SPUF ¶ 52, 53.) Covidien also performed water and glycerin droplet tests in an effort to detect the existence of transverse vibrations along the Sonicision waveguide where Dr. Schafer contends that the sleeve contacts. (SPUF ¶ 50.) The results of those tests support the testimony of Covidien engineer, Robert Stoddard, that the Sonicision device does not experience any problems with transverse vibrations. (SPUF ¶ 51.) Ethicon has failed to contradict this evidence with any showing that transverse vibrations actually occur in the Sonicision. (*See* SPUF ¶¶ 49, 60-65.)

Because Sonicision does not experience problems with "unwanted transverse vibrations," even if there were contact between the sleeve and waveguide other than at the nodal ribs, such contact would not result in the absorption of undesired vibrations. Rather, such contact could

---

[5] Dr. Schafer's bare and conclusory assertion that Sonicision experiences undesired vibrations is unsupported by any factual evidence or underlying testing or experimentation. (*See* Ex. C at ¶¶ 69-70.)

13

have the adverse effect of absorbing desired, longitudinal vibrations essential to the proper functioning of the device. That is why dampening the waveguide is identified as a "failure mode" of the sleeve component. (SPUF ¶ 55.) Thus, the Sonicision sleeve is specifically designed to avoid absorbing *any* vibrations along the waveguide.

In sum, absent evidence of significant unwanted transverse vibration interrupting the device's operation, the Sonicision sleeve cannot be "adapted to absorb undesired vibrations along the transmission rod," regardless of whether the sleeve contacts the transmission rod other than at fixed support points. The evidence fails to show that the Sonicision experiences any transverse vibrations, let along undesired vibrations affecting the operation of the device. What the evidence does show, however, is that Sonicision is purposefully designed to avoid unwanted transverse vibrations, and that the device is constructed to avoid the sleeve's absorption of *any* vibrations along the waveguide. Therefore, in light of the record evidence, Ethicon has failed to raise any genuine issue as to whether the Sonicision sleeve is "adapted to absorb undesired vibrations along the transmission rod," and Sonicision does not literally infringe claims 1 and 3 of the '275 patent as a matter of law.

## V. CONCLUSION

Based on the foregoing, Ethicon has failed to raise any genuine issue of material fact with respect to alleged infringement of the '275 patent's claims 1 and 3. Ethicon cannot prove that Sonicision sleeve meets the "configured to loosely contact" and "adapted to absorb undesired vibrations along the transmission rod" limitations of independent claim 1 and dependent claim 3. Because Sonicision fails to meet certain limitations of the asserted claims, there can be no literal infringement as a matter of law. Summary judgment of no infringement is therefore appropriate.

s/ Robert A. Pitcairn, Jr.  
Robert A. Pitcairn, Jr.

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served this 21st day of October, 2013 by electronic mail to the following: David E. Schmit, Frost Brown Todd LLC, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202.

s/ Robert A. Pitcairn, Jr.  
Robert A. Pitcairn, Jr.

KTBH: 4837-4818-6390, v. 1