**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ETHICON ENDO-SURGERY, INC., | Case No. 1:11-cv-871 |
| Plaintiff, | |
| vs. | Judge Timothy S. Black |
| COVIDIEN, INC., | |
| Defendant. | |

## ORDER ON CLAIM CONSTRUCTION

The parties submitted briefs in support of their proposed claim constructions. (Docs. 166, 168, 169, 170). Additionally, the Court held a *Markman* hearing on March 14, 2017.

### I. BACKGROUND FACTS

Plaintiff Ethicon Endo-Surgery Inc. ("Ethicon") manufactures a line of ultrasonic surgical devices under the "Harmonic" brand. These products are widely used and relied upon by healthcare professionals. Ethicon's products use blades oscillating at extremely high speeds to make surgical procedures easier and safer, reducing damage to surrounding tissue, causing less bleeding, and generally allowing for better surgical outcomes than other methods of incision. Ethicon holds a portfolio of patents covering its Harmonic line. Defendant Covidien, Inc. ("Covidien") manufactures a laproscopic, ultrasonic dissection device sold under the name "Sonicision." Ethicon alleges that this device infringes on one of its patents.

This case has a long prosecution history before this Court. Ethicon initially filed suit against Covidien in 2011 alleging violation of several patents. Following discovery, the Court granted summary judgment in favor of Covidien on the issues of both noninfringement of all patents at issue and invalidity of certain patents. (*See* Docs. 130, 131, 132, 133, 134). On appeal, the Federal Circuit Court of Appeals reversed this Court's rulings in part, holding that none of the patents at issue were invalid, but upholding the Court's findings of noninfringement as to some of the patents. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015).

Following the Federal Circuit's ruling, Covidien filed a separate suit seeking a declaratory judgment of noninfringement of six of Ethicon's patents. Ethicon filed a counterclaim alleging infringement of seven of its patents. That action was consolidated with the current action. Prior to the claim construction hearing regarding the claims to be construed in the present Order, the parties, to their great credit, resolved and mutually agreed to dismiss all claims from each party relating to all patents, except for U.S. Patent No. 9,168,055. (Doc. 20).

## II. THE PATENTS AT ISSUE

There is only one patent at issue with regards to this claim construction: U.S. Patent No. 9,168,055 ("the '055 patent"). The '055 patent was filed in 2013, following the Federal Circuit's previous ruling in this case.

## III. THE CLAIMS AT ISSUE

The parties dispute the construction of two terms or phrases in the patents-in-suit: (1) "spring"; and (2) "predetermined average coaptation pressure/predetermined clamping force."

## IV. STANDARD OF REVIEW

Claim construction is a matter of law to be decided exclusively by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370. "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Claim terms are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective date of the patent application." *Id*. at 1313. Absent an express intent to the contrary, a patentee is presumed to have intended the ordinary meaning of a claim term. *York Prods. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). The Court must also consider the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Id.* Finally, the Court may consider "the prosecution history of the patent, if in evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.

Cir. 1996). If these documents unambiguously define the scope of the patented invention, there is no need for the Court to consider any extrinsic evidence. *Id.* at 1583.

In construing claims, the Court determines whether or not a term requires construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Court is not required to accept a construction of a term, even if the parties have stipulated to it, but instead may arrive at its own construction of claim terms, which may differ from the constructions proposed by the parties. *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). "The appropriate starting point [...] is always with the language of the asserted claim itself." *Comark Commc'ns, Inv. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

The general rule is that terms in the claim are to be given their ordinary and accustomed meaning. *Reinshaw v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone. *See, e.g., Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865-66 (Fed. Cir. 1997). A court must presume that the terms in the claim mean what they say and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning to skilled artisans of claim terms. *See, e.g., Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).

In order to overcome this heavy presumption in favor of the ordinary meaning of claim language, it is clear that "a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements." *Renishaw*, 158 F.3d at 1248. That is, claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources. *See, e.g., McCarty v. Lehigh Valley R.R.*, 160 U.S. 110, 116 (1895) ("If we once begin to include elements not mentioned in the claim in order to limit such claim …, we should never know where to stop").

Courts have available to them a number of canons of construction which aid in construing patent claims. Among them are:

1) Each claim in a patent has a different scope. A dependent claim has a narrower scope than the claim upon which it depends.

2) Claims are not limited to the preferred embodiment disclosed in the specification.

3) Ordinarily, different words in a patent have different meanings.

4) Ordinarily the same word in a patent has the same meaning.

5) Ordinarily, the meaning should align with the purpose of the patented invention.

6) Ordinarily, general descriptive terms are given their full meaning.

7) If possible, claims should be construed so as to preserve their validity.

8) Ordinarily, absent broadening language, numerical ranges are construed exactly as written.

9) Ordinarily, absent recitation of order, steps of a method are construed to have a particular order.

10) Absent highly persuasive evidentiary support, a construction should literally read on the preferred embodiment.

<u>Patent Law and Practice</u>, Fifth Edition, Herbert F. Schwartz at 134-136.

Courts may also consider the patent's prosecution history, if in evidence. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). The prosecution history "constitutes a public record of the patentee's representations concerning the scope of and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

In most circumstances, analysis of the intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583.[1] Extrinsic evidence may be considered, as it "'can shed light on the relevant art,' but is less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (*quoting Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)). Dictionaries and technical treaties, which are extrinsic evidence, hold a "special place" and may sometimes be considered along with the

---

[1] Courts must first look to intrinsic evidence (*i.e.*, the claim itself, specifications, prosecution history and prior art cited in the patent) to resolve any ambiguities. *Id.* at 1582.

intrinsic evidence when determining the ordinary meaning of claim terms. *Id.* at 1267. However, the Federal Circuit cautions against the use of nonscientific dictionaries, lest dictionary definitions be converted into technical terms of art having legal, not linguistic, significance. *Id.*

V. THE COURT'S CONSTRUCTION OF THE CLAIMS

A. Term: "spring"

Ethicon proposes that there is no construction necessary for the term "spring." In the alternative, Ethicon proposes that "spring" be defined as an "elastic element."

Covidien proposes that "spring" be defined as "(a) a constant force spring (b) used to provide a predetermined clamp force."

Ethicon argues that this is a case where "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). A disputed claim term is generally construed to have its ordinary and customary meaning unless the patentee either provides a definition for the term that differs from that ordinary and customary meaning or expressly disavows the full scope of the term. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Ethicon claims that the '055 patent did not afford a special meaning to the term "spring," and so no construction is required.

Covidien argues that the definition of "spring" advanced by Ethicon would be improperly broad. Covidien notes that the specification for the '055 patent contains only

one reference to a spring, which is a "substantially constant force spring" specifically described as a mechanism for creating or applying predetermined clamp force. (Doc. 168, at 13 (citing '055 patent, Col. 4:50-52)). Covidien argues that "claim language must be viewed in light of the specification, which is the 'single best guide to the meaning of a disputed term.'" (Doc. 169, at 6 (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1324 (Fed. Cir. 2015))); *see also Nystrom v. TREX Co., Inc*., 424 F.3d 1136, 1144–45 (Fed. Cir. 2005) (parties are "not entitled to a claim construction divorced from the context of the written description and prosecution history.").

While Covidien is correct that the specification must be considered in evaluating a disputed term during claim construction, Covidien 's proposed construction is contrary to the well-established rule that limitations from particular embodiments in the specification should not be imported into the claims themselves. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). In *Phillips*, the Federal Circuit "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id*. The Federal Circuit rejected that contention "not just because section 112 of the Patent Act requires that *the claims themselves* set forth the limits of the patent grant, but also because persons of ordinary skill in the art *rarely* would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.*

While the '055 patent specification only mentions one spring, the '055 patent claims contain several mentions of springs that are not limited to a spring that provides a predetermined clamping force. Claims 20 and 22 (as well as in similar phrases in claims

1, 9, 14 and 19) recite "a spring for *limiting* a clamping force" (emphasis added), and claim 24 recites "a spring for *transferring* a clamping force" (emphasis added). Covidien has suggested that it believes the '055 patent's recitation of the terms "force-limiting" and "force-transferring" spring renders the claims of the '055 patent invalid for lack of written description under 35 U.S.C. § 112. (Doc. 168, at 8, fn. 4). However, the matter of invalidity is not before the Court at present, and, for the purposes of claim construction, the inclusion of springs other than a spring for providing a limited clamping force in the '055 patent claims supports Ethicon's construction of "spring."

The Court is unpersuaded by Covidien's argument that the prosecution history of the '055 patent suggests that Covidien's limited construction of "spring" should be adopted. Covidien argues that "Ethicon distinguished over the prior art and secured allowance of the parent '501 patent only *after* amending the applied-for claims to include the 'predetermined' limitation." (Doc. 169, at 9). This statement is correct, but Covidien fails to adequately argue why this requires the Court to construe the specific term "spring" so narrowly as to only include a spring that provides a predetermined clamp force, especially given that springs that do not fit this definition are contemplated in the various patent claims.

The ordinary meaning of the term "spring" is apparent, and the inventor did not specifically define the term or disavow its customary meaning, either expressly or in context. Accordingly, the Court finds that no construction is necessary for the term "spring."

## B. Term: "predetermined average coaptation pressure" (claim 1)/ "predetermined clamping force" (claim 14)

These two terms are closely related, and each party has proposed definitions for the two terms that are identical except for whether the word "force" or "pressure" is used.

Ethicon proposes that "predetermined average coaptation pressure" and "predetermined clamping force" be defined as "clamping (pressure/force), which is set in advance of operating the clamping arm and which is measured when the clamping arm is in a closed position."

Covidien proposes that "predetermined average coaptation pressure" and "predetermined clamping force" be defined as "clamping (pressure/force) set in advance of operating the clamping arm or clamping (pressure/force) set by the user prior to operating the clamping arm."

This Court previously construed these two terms at an earlier stage in this litigation in connection with U.S. Patent No. 8,182,501 ("the '501 patent"). As indicated on its face, the '055 patent at issue here is a continuation of the application that directly resulted in the issuance of the '501 patent. Accordingly, the '055 and the '501 patents share the same specification in all material aspects. The parties had previously agreed upon this construction, and the construction was not appealed by Ethicon. Typically, this Court's prior construction of a claim would have a binding and preclusive effect on the parties with respect to the claim's construction in subsequent related actions. *See Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987) ("The

prior determination of certain issues, including the issues of claim construction…, bars judicial redetermination of those issues as between the parties to the prior actions.").

Ethicon argues that this Court should modify its previous construction of the terms at issue despite that construction never having been appealed because Ethicon's "proposed modifications are guided by the Federal Circuit's subsequent opinion in connection with the '501 patent, and the goal of removing superfluous language from the construction." (Doc. 170, at 13). Ethicon's argument refers to the Federal Circuit Court of Appeals ruling overturning this Court's prior determination that the '501 patent was invalid for indefiniteness. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015). In that opinion, the Federal Circuit held that the '501 patent was not invalid for want of a specified method for measuring the clamping force exerted by the clamping pressure exerted by the surgical shears, stating that "while the thickness of tissue disposed between the tissue pad and blade may affect the amount of clamping force required to operate the clamping arm and fully transect that tissue, such variances are irrelevant to the scope of the claims, which are concerned with the predetermined pressures measured when the clamping arm is *already* in a closed position." *Id.* at 1320.

The Court does not agree with Ethicon that the Federal Circuit's ruling has any impact on this Court's previous construction of the terms at issue. From a procedural standpoint, the Federal Circuit was not addressing the construction of the terms, as that construction was not appealed. The Federal Circuit's opinion also did not purport to modify any of the constructed terms at issue in the action. Finally, the Court does not agree that Ethicon's proposed modifications are even indirectly implicated in the Federal

Circuit's ruling. The Federal Circuit held that a skilled artisan would know how to measure the *resulting clamping pressure* once the surgical shears had been closed. However, both parties agree that the predetermined pressure is set in advance of operating the clamping arm. It is true that, should the device be working as intended, one would presume that the resulting pressure, measured when the shears are in the closed position, would align with the predetermined pressure that had been set in advance of operating the clamping arm. However, the method of measuring the resulting clamping pressure or force does not impact the fact that said force was predetermined.

Ethicon's proposed modification to the Court's previous construction of the terms at issue introduces information extraneous to the concept of whether and how the clamping arm of the device at issue can be assigned a predetermined force or predetermined pressure. Accordingly, the Court adopts Covidien's construction of "predetermined average coaptation pressure" and "predetermined clamping force."

## VI. CONCLUSION

Therefore, the parties shall construe the contested terminology of the '055 Patent as set forth in this Order.

**IT IS SO ORDERED.**

Date: 4/10/17

Timothy S. Black
United States District Judge